SUSAN BOWER, PROSECUTRIX, v. STATE OF NEW JERSEY, DEFENDANT.

Argued May 6, 1947—Decided June 3, 1947.

Before CASE, CHIEF JUSTICE, and Justices PARKER and BURLING.

For the prosecutrix, *James A. Major.*

For the defendant, *Walter G. Winne,* Prosecutor of the Pleas.

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. The writ of *certiorari* brings up the conviction of the prosecutrix in the Criminal Judicial District Court of Bergen County on a complaint of disorderly conduct rested upon *R. S.* 2:202–1. Sentence of forty days in the Bergen County jail was imposed. A review of the conviction by a judge of the Bergen County Court of Quarter Sessions under *R. S.* 2:214–14 resulted in an affirmance.

The complaint charged that Susan Bower did, on October 5th, 1946, at the Borough of Palisades Park, "loiter in the vicinity of Broad and Columbia Avenue at 11:15 A. M. and failed to give a good account of herself. Disorderly Conduct Title 2:202–1." The statutory provision is that "all persons * * * who shall wander abroad and lodge in taverns, inns, beer houses, houses of entertainment, market houses, outhouses, barns or other places, or in the open air, and not give a good account of themselves * * * shall be adjudged disorderly persons."

The complaint is defective in that it does not set forth an offense under the statute. Loitering is an offense under other sections of the Disorderly Persons Act (as *R. S.* 2:202–7 and *R. S.* 2:202–8), and it is a permissible subject for municipal ordinances (*R. S.* 40:48–1), but it is not an element under *R. S.* 2:202–1. The offense does not lie in simply failing to give a good account of one's self, and the complaint did not charge a violation in the words of, or, in our opinion, according to the intent of, the statute. *Cf. Archer* v. *First Criminal Judicial District Court of the County of Bergen,* 10 *N. J. Mis. R.* 1159; *Breisia* v. *Court of Common Pleas of Hudson*

*County,* 11 *Id.* 937. The motion to dismiss the complaint, made at the beginning of the trial, should have been granted.

The proof was that a police officer of Palisades Park was riding, in civilian clothes, in a municipal automobile which did not contain a marking of the police department. He was not on patrol duty or on any regular duty at the time but had been assigned to an investigation which he had just finished. He saw a young woman standing on the bridge at the intersection of Broad Avenue and Columbia trying to "thumb a ride from the car that was in front." The officer stopped and questioned the young woman who gave her name as Susan Bower and said that she had originally come from Bozeman, Montana; that she was then on her way from Bangor, Maine, where she had been on a farm picking potatoes, to Florida; that she had gone from Oregon to Montana and from there across the country picking potatoes on the way; that she had $14 on her person which would be enough to get her to Florida in the manner in which she was traveling; that she was not working at the moment but was on her way to get a job in Florida; that she had slept in a truck the night before on the way down from Bangor; and that she had parents who knew where she was but she refused to tell who they were or where they were. She had with her a sleeping roll and also a handbag which was searched and found to contain customary articles of personal property, including toilet articles, and a writing pad in which was folded a letter, not yet mailed, written by the accused and signed "Susan Bower" giving her address for reply as "care of General Delivery, Jacksonville, Florida." Called upon to explain the letter, she said that it related to an altercation which she had had with another girl. She gave some of the details but declined to state where the altercation took place or to give names. She wore a pair of blue overalls, rolled up to a point between her knees and ankles. Her hair was disheveled, and her face was "kind of dirty." Further information was, in general, refused.

There was proof, wholly hearsay, admitted over objection and therefore incompetent to sustain the conviction, that the chief of police of Bozeman, Montana, had, upon request, tele-

graphed some information which led to a further inquiry of a resident of Nutley. Not only was the proof incompetent because of the manner of introduction; it appears to us to lack pertinency and significance to the point of being irrelevant. The state does not argue against the illegality of that proof.

The meritorious question arising out of the trial is, assuming for this part of the argument that the complaint was sufficient, whether the evidence sets up an offense under the statute. It is not an offense to have a dirty face, or to wear blue overalls, or to travel by gratuitous rides from Bangor, Maine, to Florida, or to sleep in a truck, or to pick potatoes in one or another part of the country or, with $14 in pocket, to be temporarily out of employment on the way from the completion of one job to the search for another. There is a provision within the motor vehicle legislation, *R. S.* 39:4–59, that "no person shall stand in a roadway for the purpose of or while soliciting a ride from the operator of a private vehicle." But this young woman is not shown to have been standing in the roadway, she was not charged with a violation of that statute, and the statute is not relied upon or referred to in the proceedings. If no one of the enumerated acts was unlawful, may the combination of them be called unlawful? We think not.

It remains, then, to consider whether, in view of that situation, the refusal to give more information than was given constitutes a failure to give a good account of one's self in violation of the statute. It is not suggested that the prosecutrix was a minor, or that she was under the influence of liquor or otherwise mentally confused, or that she had committed, or planned to commit, or was suspected of committing any offense against our statutes other than not giving a good account of herself. It is true that the explanation given of the unmailed letter was that there had been fisticuffs of some sort; but that information came from the accused by way of giving an account of herself, and so did the information that she had slept the preceding night in a truck coming down from Bangor. We think that Miss Bower was subject to no penalty for refusing to give more particulars about the

subject-matter of the letter, and, further, that under the circumstances it was understandable that she should decline to give the names and addresses of the members of her family. She had given the name of her home town, her place of last work, her proposed destination, the nature and purpose of her journey, all of which were consistent with the known facts. It is not shown that she was standing in the place where she was apprehended for more than a moment's time or that she had solicited a ride from more than one vehicle. It may hardly be said that that was loitering if it be that loitering is within the reach of the statute. She was en route and showed no indication of annoying the community with her continued presence. She was not traveling in ill-favored company or in company of any sort. If it be inferred that she had "wandered abroad" or slept in proscribed places, such indiscretions had not been committed within the jurisdiction of her arrest and she was not wanted elsewhere because of them. The manner of dress which offended the police officer offends many people; but, also, many young and some older women affect it without danger of being jailed. In short, we discover no sound reason why the officer should have pressed the accused to give a minute account of herself; and we think that the account given was adequate to the occasion.

The state contends that the question of the legality of the conviction is now moot inasmuch as the prosecutrix served the sentence imposed upon her and, indeed, served the sentence when she might have asked that bail be fixed. We attach little importance to the omission to apply for the fixing of bail. It does not appear that the prosecutrix was in position to provide security for bail in any amount. It cannot be said that the serving of the sentence was voluntary or that the accused, in serving it, thereby availed herself of some leniency extended by the court.

The stigma of arrest, conviction and jail sentence does not become moot simply because, in orderly legal procession, the sentence has been served and completed. It is contrary to human experience that the normal individual should fail to suffer both in his own feelings and in public esteem from having been found guilty of a violation of the public statutes

and from having served a jail sentence in consequence thereof, or that he should fail to profit both in personal feeling and in public regard by the judicial finding that such conviction and sentence were unlawful. We think that the law was correctly stated by Mr. Justice Swayze in *Fruehwirth* v. *South Amboy,* 76 *N. J. L.* 63, when he said in speaking of one who had been found guilty of a violation of a borough ordinance and sought to review the proceedings: "He is not prevented by the fact that he has paid the fine. In civil actions a judgment may be reversed on error, though it has been satisfied. *Tidd Pr.* 1033. The same rule has been applied to criminal cases where the sentence has been served or the fine has been paid. *Barthelemy* v. *People,* 2 *Hill* 248; *Commonwealth* v. *Fleckner,* 167 *Mass.* 13. As was said in the former case, 'The payment or satisfaction of an erroneous judgment against a party can never be allowed as a bar to a writ of error, even in a case where we must see that no restitution could follow the reversal as a legal consequence, and no costs be recovered. An erroneous judgment against him is an injury *per se,* from which the law will intend he is or will be damnified by its continuing against him unreversed.' " The decisions in *Stizza* v. *Essex County Juvenile, &c., Court,* 132 *N. J. L.* 406, and *D'Aloia* v. *Summit,* 89 *Id.* 154, are not pertinent to the question here involved. In the former case the finding had been of insanity, which we apprehend is distinguishable from a conviction of wrongdoing. In the latter case the decision went upon a determination that a fine, voluntarily paid, may not be recovered. The opinion in *Westfield* v. *Stein,* 113 *Id.* 1, contains a *semble,* which relates to a supposititious case where the jail sentence remains unchallenged until after the sentence has expired, and the subject is dismissed (at *p.* 3) with the statement that the entire question was moot *in that litigation.* In the instant case the sentence had not expired or been fully served when the appeal was taken.

The judgment of conviction will be reversed, without costs.